UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CT-3227-BO

| | |
|---|---|
| MYRON RODERICK NUNN,<br>　　Plaintiff, | )<br>)<br>) |
| v. | )     O R D E R<br>) |
| NORA HUNT, et al.,<br>　　Defendants. | )<br>)<br>) |

On November 10, 2011, plaintiff, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983. Comp., D.E.1. On June 5, 2012, a detailed frivolity review was undertaken by this court. Order, D.E. 15. Plaintiff's claims regarding interference of outgoing mail and unfair administrative disciplinary proceedings were allowed to continue from frivolity. Id. Within the complaint, plaintiff named Superintendent Nora Hunt, Assistant Superintendent Vickie B. Hardie, Disciplinary Hearing Officer Michelle Williams, Captain Melisa Evans, and Correctional Officer Schoolcraft. However, Nora Hunt and Vickie B. Hardie were dismissed from the action given they were named solely due to their positions as Superintendent and Assistant Superintendent, and § 1983 does not extend liability to those named in the capacity of respondeat superior. Id.

Thereafter, defendants Williams, Evans, and Schoolcraft moved to dismiss the claims against them. Mot. to Dismiss, D.E. 23. The court granted the motion in part, and denied it in part. Order, D.E. 37. The court held that Nunn's assertion of monetary damages amounted to an amendment of the original claim justifying allowance of the "interference with mail" claim to

continue. However, the plea for injunctive relief and the claim against defendant Williams, the hearing officer, were dismissed.[1] Id.

Nunn then filed a response to that order contending defendant Williams "refused to consider signed statements by two officers in Petitioner's favor or to call them as witnesses as he requested, which was a Wolff [v. McDonnell, 418 U.S. 539 (1974)] violation." Response, D.E. 38 at 1. The court reconsidered its June 7, 2013, order and directed that the issue of Wolff due process protections and violations therefrom continue. Therefore, the issue of due process violations arising out of the disciplinary hearing, along with the monetary damages issue arising out of the mail claim, were allowed to continue to be litigated. Order, D.E. 39 at 2. These are the issues presently before the court to be resolved.

Pending before the court for plaintiff are several motions: a motion to alter or amend [D.E. 40] the court's June 7, 2013, order, a motion to amend the complaint [D.E. 41], and a motion for entry of default [D.E, 45]. Pending before the court for defendants Michelle Williams, Melissa Evans, and Jason Schoolcraft is a motion for summary judgment. Mot. for Summ. J., D.E. 42. Plaintiff was given notice of the motion, and he filed a response. Roseboro Notice, D.E. 44 and Response, D.E. 49. In this posture, the matter is ripe for determination.

i. Facts and Allegations

a. Nunn's Allegations

Nunn alleged that on or about August 10, 2011, defendant Schoolcraft, a correctional officer, "interfered with and censored" two outgoing personal letters written and posted by Nunn.

---

[1] Plaintiff had moved from the correctional facility to another thus mooting the request for injunctive releif.

Compl., D.E. 1 at ¶ IV. Nunn alleged that defendant Schoolcraft delivered the letters to defendant Evans, a correctional captain, who wrote Nunn up for "for buying and selling tobacco, doing law work for inmates, and receiving money orders from inmates' families[,] [e]ven though no tobacco has been confiscated, no evidence of other inmates' law work, and no money orders received from inmates' families." Id. The matter was referred to defendant Williams, a Disciplinary Hearings Officer. Id. at ¶ 4. Nunn states that on the disciplinary report, defendant Schoolcraft falsely gave the date the letters were mailed as September 9, 2011, not August 10, 2011. Id.

Nunn claims that on September 24, 2011, he pleaded "not guilty" before defendant Williams, who was "unprofessional, disrespectful, abusive, hostile, partial, unfair, and bias[ed]." Id. at ¶ 5. Nunn claims that Williams refused to hear or view evidence in his favor, that she told Nunn he was guilty, and that she pressured him into changing his plea from not guilty to guilty, which he did. Id.

    b.    Defendants' allegations and supporting facts

On August 26, 2011, defendant Schoolcraft, a mail room processing assistant, observed two letters posted by Nunn to addresses outside the facility. Mem. in Supp., Schoolcraft Aff. at ¶ 4. The letters were addressed to relatives of another inmate, David Biggs. Id. Defendant Schoolcraft searched the letters pursuant to NCDPS policies and procedures allowing "Personal Mail [to be] read, censored, or rejected based on legitimate institutional interests of order and security." Id.; and Ex. A-1.

3

In the letters, Nunn wrote:

To "Robert":

> J.T. Bowman received the $70.00 but I haven't received the $30.00. Sometimes prison officials will not allow the same person to send multiple inmates money orders. The way around this obstacle is to use a different name as the sender.

Exhibit C-1 at 18.

To "David" (presumably fellow inmate David Biggs):

> I supplemented your habeas corpus and prepared your lawsuit. I need your paperwork in order to prepare your MAR. We agreed to $500.00 for your litigation. Thus far approximately $400.00 has been spent including phone calls. Wherefore you should put Robert on notice that we will need him as soon as more tobacco [illegible]."

Id.

To "Cheryl":

> Juice got released yesterday. He said he is going to throw me 5 pounds of tobacco over the fence. I'll make $3,200.00 off every 5 pounds but I will need someone to pick money up from Western Union on a regular basis. If he does it, I'll have Biggs to send money for you to get a cell phone so we can send you confirmation numbers. . . . It's time to start making money and stop spending money.

Exhibit C-1 at 21.

To "Ann":

> In 2003 my mother sent me and two other inmates money orders. We were called to the captain's office. He warned me not to put money in other inmates' accounts again. So I had my mother to use a different name when I had money sent to other inmates. In order to get money accepted. Do you understand? . . . . I do law work for inmates. I was doing law work for David. I filed an action which made attorney David Ward return $2,000.00 to David. I prepared a federal habeas corpus for David. I filed a lawsuit against this prison for David – but they intercepted it. When David get [sic] out of segregation I will file a motion for appropriate relief for him.

Id. at 22-23. Schoolcraft forwarded the letters to defendant Evans, a correctional captain. Once defendant Evans had reviewed the materials and determined discipline was necessary, she forwarded the letters to the investigating officer for further action. Evans Aff. at ¶ 4. After the

4

investigation was completed, Nunn was charged with receiving unauthorized funds from other inmates' families, assisting inmates with legal work, and buying tobacco. Thereafter, Nunn appeared before defendant Williams, the Disciplinary Hearings Officer. Williams advised Nunn he had two options: plead guilty and accept a reduced or suspended punishment, or plead not guilty and choose to go to hearing. Williams Aff. at ¶ 5-6. If he chose to plead not guilty and go to hearing, statements and evidence would be taken and, if he were found guilty, punishment would be imposed per policy. Id. at ¶6. However, he would maintain his right to appeal. Id. Nunn plead guilty. Ex. C-1 at 5. At that time, he signed a "Waiver of Hearing and Plea of Guilty" that explicitly stated:

> I have received a written notice of violating of the following offense(s) and hereby freely acknowledge that I am guilty of the offense(s). I am willing to waive a hearing before the hearing officer and I accept the following reduced penalty/penalties for offense(s) set out below. This waiver also waives the right to appeal. I fully understand my right to a hearing and I have not been coerced or intimidated by anyone into signing this waiver.

Id. Because he pled guilty, no hearing was held. Id. at ¶ 9.

Nunn filed a grievance challenging Schoolcraft's opening of his mail. Compl. at 1. The superintendent of the facility, Nora Hunt, responded and informed him:

> [T]he North Carolina Department of Correction adopted a policy that allows for the inspection of ALL incoming and outgoing inmate correspondence. The policy states that this inspection serves to prevent inmates from sending or receiving any materials or information through the mail that threatens to undermine the security or order of the facility and serves to prevent inmates from sending or receiving any mail that contains contraband or other material which cannot be lawfully sent through the mail. As such, ANY inmate correspondence coming into or going out from a departmental facility can be inspected per law and such inspection is deemed necessary to maintain the security and order of the facility.

Id. at 3.

5

ii. Legal Discussion

    a. Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587.

    b. Qualified Immunity

Defendants assert qualified immunity as to plaintiff's claims. Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335,

6

341 (1986); see Reichle, 132 S. Ct. at 2093; Messerschmidt v. Millender, 132 S. Ct. 1235, 1244–45 (2012); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011); Pearson, 555 U.S. at 231–32.

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Reichle, 132 S. Ct. at 2093; Pearson, 555 U.S. at 232; Evans v. Chalmers, No. 11-1436, 2012 WL 6554846, at *5 (4th Cir. Dec. 17, 2012); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 n.24 (4th Cir. 2009); Miller v. Prince George's Cnty., 475 F.3d 621, 626–27 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009). The court decides which question to address first. Pearson, 555 U.S. at 236; see Reichle, 132 S. Ct. at 2093; al-Kidd, 131 S. Ct. at 2080. The court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. The court also must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 131 S. Ct. at 2083 (alterations in original) (quotations omitted); see Reichle, 132 S. Ct. at 2093; Anderson v. Creighton, 483 U.S. 635, 640 (1987). The United States Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2083; see Reichle, 132 S. Ct. at 2093. Defendants are entitled to qualified immunity if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic, 667 F. Supp. 2d at 606.

c. Mail

Plaintiff argues that defendants have mishandled his personal mail. While prisoners and detainees have some First Amendment rights in both receiving and sending mail, it is clear that prison officials may place reasonable restrictions on these rights. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Pell v. Procunier, 417 U.S. 817, 822 (1974); Bell v. Wolfish, 441 U.S. 520, 544-52 (1979). ). In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. See Thornburgh, 490 U.S. at 413.

In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly- applied policy, open an inmate's incoming mail. See Wolff v. McDonnell, 418 U.S. 539, 574 -77 (1974); Bumgarner v. Bloodworth, 768 F.2d 297, 301 (8th Cir.1985) (per curiam). Detention officers may also open and read outgoing general mail. Altizer v. Deeds, 191 F.3d 540, 549 (1999) ("Because there is a substantial governmental interest in censoring certain materials from an inmate's outgoing mail, e.g., materials detrimental to the security, good order, and discipline of the institution, or dangerous to the public, there is a fortiori a legitimate penological interest in opening and inspecting an inmate's outgoing mail for such material."); Rodriquez v. James, 823 F.2d 8, 11-13 (2nd Cir. 1987); and United States v. Felipe, 148 F.3d 101 (2nd Cir. 1998). Under these standards, the allegations of the non-legal mail issue fail to state a constitutional claim and qualified immunity protects defendants.

8

d.  <u>Wolff</u> violations

As for the allegations of <u>Wolff</u> violations in hte disciplinary proceeding, the claim fails. For clarity, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. See <u>Freeman v. Rideout</u>, 808 F.2d 949, 952–53 (2d Cir. 1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation); <u>Taylor v. Hayman</u> 2011 WL 735449, 8 (D.N.J.,2011).

However, in a prison disciplinary hearing which result in the loss of good time credits, there are procedural due process safeguards. These consist of: (1) written notice of the charges; (2) a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. <u>Wolff</u>, 418 U.S. at 565-66. Nunn did received, and acknowledged in writing, written notice of the disciplinary charges. Mem. in Supp. of Mot. for Summ. J., Ex. C-1 at 8. While this notice was not provided in advance, Nunn waived his right to receive 24 hours' notice before meeting with the hearing officer. <u>Id.</u> Second, Nunn waived his right to call witnesses and present documentary evidence when he pled guilty and waived his right to hearing. <u>Id.</u> Ex. C-1 at 5. This waiver was in writing and signed by Nunn. <u>Id.</u> Third, he did not receive a written statement of evidence because no evidence was taken in light of his guilty plea. The evidence

9

before the court is that at Nunn's own election, no hearing was even held. Again, qualified immunity protects defendants from this claim.

iii. Conclusion

For the above stated reasons, summary judgment for defendants [D.E. 42] is GRANTED and the case is CLOSED. All motions to compel discovery [D.E.34] and to amend the claims [D.E. 41] were fully considered and denied given the evidence before the court which was also provided to Nunn. The motion to alter or amend is DENIED as MOOT [D.E. 40] given the June 12, 2013, order which allowed an earlier motion to reconsider. The motion for entry of default is DENIED [D.E. 45]. This concludes the case in its entirety.

SO ORDERED, this the 30 day of January 2014.

*/s/ Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE